UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
GIULIO MUSTO, AUREA AVILA, DONNA
BATES, ANA GARCIA, JOSEPH E. DUNCAN,
HERBERT CARRILLO, AGNES DALLAS, DAVE
DENNY, ALFONSO FERGUSON, ANGELA
TAYLOR HEADLEY, CAMERON KING, COLIN
MAYERS, FEDERICO PAUL, IRWIN ROBERTS,
JOSE RODRIGUEZ, RENFORD SCOTT, and
CLAUDINE SMITH,                                                **MEMORANDUM & ORDER**

          Plaintiffs,                                      03-CV-2325(RJD)(ALC)

    -against-

TRANSPORT WORKERS UNION OF AMERICA,
AFL-CIO, LOCAL 501 TRANSPORT WORKERS
UNION OF AMERICA, AFL-CIO, and AMERICAN
AIRLINES, INC.,

          Defendants.
------------------------------------------------------------------X
DEARIE, District Judge.

        On August 25, 2011, this Court issued a Memorandum and Order denying plaintiffs' motion for summary judgment and granting defendants' motion for summary judgment ("2011 Decision"). On September 20, 2011, plaintiffs filed a motion to vacate or amend the 2011 Decision. For the reasons stated below, plaintiffs' motion is denied.

        Rule 60(b)(1) of the Federal Rules of Civil Procedure allows for relief from a judgment based on, <u>inter alia</u>, "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Rule 60(b)(1) is available for a district court to correct legal and factual errors by the court. <u>United Airlines, Inc. v. Brien</u>, 588 F.3d 158, 175 (2d Cir. 2009) (legal errors) (internal citations and quotation marks omitted); <u>In re 310 Associates</u>, 346 F.3d 31, 35 (2d Cir.2003) (factual errors). The same relief is available under Rule 59(e). <u>See</u> <u>Corines v. Am. Physicians Ins. Trust</u>, 769 F. Supp. 2d 584, 593-94 (S.D.N.Y. 2011) (citing <u>Eisemann v. Greene</u>, 204 F.3d

393, 395 n.2 (2d Cir. 2000) (internal citations omitted) ("To be entitled to reargument, a party 'must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion.'")).

Plaintiffs make several arguments in support of their motion to vacate or alter this Court's 2011 Decision, none of which justifies relief.

Plaintiffs argue that the General Board of Adjustments ("Board") exceeded its authority by returning former Utility Men who had been assigned the Cabin Cleaner classification back to the Utility Man position for purposes other than determining their pay scale. This argument was raised in the original briefing and was extensively addressed in the 2011 Decision. See Musto v. Transp. Workers Union of Am., 818 F. Supp. 2d 621, 639-42 (E.D.N.Y. 2011). Plaintiffs have failed to demonstrate any "mistake, inadvertence, surprise, or excusable neglect" that would warrant vacating the Court's 2011 Memorandum and Order. Instead, they attempt to reargue issues that have already been extensively briefed and decided in defendants' favor. This is not an appropriate use of Rules 59(e) and 60(b).

Plaintiffs also argue that this Court's finding that the "unambiguous language" of the 1996 Award returned plaintiffs to the Utility Man classification without limitation violates the law of the case doctrine. See id. at 641. In support of this argument, they point to the following language in the Court's 2004 Memorandum and Order ("2004 Decision") denying defendants' motion to dismiss: "[N]either the August 1995 letter agreement nor the 1996 Arbitration Award are related to the issue of seniority." Musto v. Transp. Workers Union of Am., 339 F. Supp. 2d 456, 463 (E.D.N.Y. 2004). "Courts apply the law of the case doctrine when their prior decisions in an ongoing case either expressly resolved an issue or necessarily resolved it by implication." Aramony v. United Way of Am., 254 F.3d 403, 410 (2d Cir. 2001). Here, plaintiffs argue that

this Court's finding in the 2011 Decision that the unchallenged 1996 Board Award returned plaintiffs, who had been reclassified as Title II Cabin Cleaners, back to the Utility Man classification for purposes beyond determining their pay scale is in conflict with the above language from the 2004 Decision.

The Court's 2011 Decision, however, is entirely consistent with the 2004 Decision. Both the 2004 Decision and the 2011 Decision state that the 1996 Award returned the Utility Men who had been reclassified as Cabin Cleaners to their former classification and provided for their cross-utilization. See Musto, 339 F. Supp. 2d at 459 (The 1996 Award "reinstated the Title II Utility Man classification and reassigned Title II Cabin Cleaners to a new Title II Utility Cabin Cleaner classification, and provided that they could be 'cross-utilized' by doing work in any other classification, so long as they were qualified."); Musto, 818 F. Supp. 2d at 641 ("The language of the 1996 Award unambiguously returns plaintiffs to the Utility Man classification . . . [and] states that they would be cross-utilized."). Plaintiffs' argument takes a passage from each decision out of context and distorts its meaning in a way that makes it inconsistent with the rest of the relevant decision and makes the decisions inconsistent with each other.

During the briefing for defendants' motion to dismiss that led to the 2004 Decision, plaintiffs argued that they were being cross-utilized to perform Title III work, and that they should have received Title III seniority. Defendants argued that such claims were time-barred because plaintiffs were required to bring such a challenge when the seniority system was adopted, not when the effects were felt. The Court rejected defendants' statute of limitations argument because it found that, at that stage of the litigation, defendants had failed to prove that either the August 1995 Letter of Understanding or the 1996 Arbitration award established a seniority system. Rather, the Court found that the 1996 Award did not address the issue of

whether Title II Cabin Cleaners would receive Title III seniority if they were cross-utilized, or whether Title II employees could bid Title II seniority against Title III seniority for purposes of vacation days or work schedules. Musto, 339 F. Supp. 2d at 462 ("There is no indication in either the August 1995 letter or in the 1996 Arbitration Award that Title II employees performing Title III work could not accrue Title III seniority while being cross-utilized in a Title III position."); id. ("In response to questions at oral argument about whether there was any event, such as a clash between Title II and Title III workers over vacation days or work schedules, which would have put Title II workers on notice of their seniority status, defendants cannot identify a single instance in which a seniority dispute arose that put them on actual notice about what [their] seniority was" (internal quotation marks omitted)). Accordingly, the Court found that the statute of limitations began to run when the effects of the seniority system were felt.

Understood in this context, the 2011 Decision is completely consistent with the 2004 Decision. With regard to defendants' statute of limitations argument, the 2011 Decision found that, despite the fact that the record had been further developed since defendants' motion to dismiss was denied, "the question persists as to whether plaintiffs were aware that their seniority did not afford them any protection with regard to the cabin cleaning work that they were performing." Musto, 818 F. Supp. 2d at 663. After reviewing the record, the Court found that the evidence "does not prove that plaintiffs were aware that they were not protected in the Cabin Cleaning/FSC classifications." Id. Just as it had in 2004, the Court found that the 1996 Award did not establish how Title II employees would be able to exercise their seniority and did not inform plaintiffs of their seniority rights vis-à-vis Title III employees. As a result, the 2011 Court again refused to dismiss plaintiffs' case on statute of limitations grounds. Id.

Plaintiffs nevertheless argue that "[h]ad Judge Trager concluded, as this court has, that the 1996 Award resolved Plaintiffs' seniority, this case would have been dismissed as untimely," and "many years of discovery, especially deposition testimony, and brief writing would have been avoided." Pls.' Mem. at 6. This is, quite frankly, an audacious argument. Plaintiffs concede that discovery laid bare the lack of factual support for their initial position that, because they were exclusively cross-utilized to perform Title III work, they should have accrued Title III seniority. Pls.' Reply Mem. of Law to Def. American Airlines' Opp. Mem. of Law at 2 ("Extensive discovery and particularly the deposition testimony of the Defendant [American]'s witnesses clarified the Plaintiffs' actual status under the [American]-[Transport Workers Union of American, AFL-CIO ("TWU")] agreements. Only after extensive discovery could the Plaintiffs articulate their argument accurately."). Indeed, as a result of discovery, plaintiffs abandoned that argument and were able to formulate the new theory advanced in their submissions on the cross-motions for summary judgment.

In addition, plaintiffs argue that they are not "bound by the 1996 Award purportedly addressing their seniority/job protection" because they were not parties to the Award, and therefore had no obligation to seek clarification from the Board or judicial review. Pls.' Mem. at 8. This argument has no merit. TWU brought the grievance that led to the 1996 Award as plaintiffs' collective bargaining representative, as it is authorized to do under Article 29(d) of the CBA. If the employees on whose behalf a union brings a grievance are not bound by the Board's decisions, then the entire grievance mechanism established by the Railway Labor Act and the CBA would fail to accomplish its purpose.

Finally, plaintiffs argue that (1) Local 501 Transport Workers Union of America, AFL-CIO's ("Local 501") actions were not rational; (2) Local 501 acted in bad faith; and (3) TWU

acted in bad faith.[1]  As with plaintiffs' first argument, this argument is simply an attempt to reargue issues that have already been extensively briefed and decided in defendants' favor.[2]  See Musto, 818 F. Supp. 2d at 636-39.  This Court has already found that Local 501 had a rational basis for its actions based on the language of the 1996 Award.  Furthermore, this Court has already concluded that

> [b]ecause plaintiffs did not challenge the 1996 Award pursuant to the RLA, they are bound by the unambiguous language of the Award, which returned plaintiffs to the Utility Man classification.  And because plaintiffs cannot challenge their classification as Utility Men, no reasonable jury could conclude that American breached the CBA by treating them as Utility Men, not Cabin Cleaners.

Id. at 641.  Because American did not breach the CBA, summary judgment for defendants would be appropriate regardless of whether Local 501 or TWU acted in bad faith.  See id. at 632 ("To establish a hybrid . . . claim, a plaintiff must prove both (1) that the employer breached a collective bargaining agreement, and (2) that the union breached its duty of fair representation vis-à-vis the union members" (quoting White v. White Food, 237 F.3d 174, 178 (2d Cir. 2001) (internal quotation marks omitted))).  The Court sees no reason to reconsider an issue that will not affect the ultimate disposition of the parties' motions.

---

[1] The 2011 Decision found that there was a disputed question of fact with regard to whether Local 501 acted with a discriminatory motive.  Musto, 818 F. Supp. 2d at 638-39.  Plaintiffs argue this finding was erroneous because plaintiffs were entitled to summary judgment on the issue of bad faith.

[2] Plaintiffs also argue that Local 501 breached its bylaws, which state:  "grievances are to be reviewed by the Local Grievance Screening Committee, consisting of Local 501's President, one additional Officer and the 'Chairman of the Section involved.'"  Pls.' Mem. at 13 (quoting R.4 at 18-19 (3/27/08 Chiofalo Dep.)).  Plaintiffs never raised this argument in the supporting papers to their motion for summary judgment or in opposition to defendants' motions for summary judgment.  Because this argument was not previously raised by the parties, and is not the result of "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under [Federal Rule of Civil Procedure] 59(b)," see Fed. R. Civ. P. 60(b)(2), it does not constitute grounds to vacate or alter the Court's previous decision.

For the reasons stated above, plaintiffs' motion to vacate or alter the August 25, 2011 Memorandum and Order is denied.

SO ORDERED.

Dated: Brooklyn, New York
      July 13, 2012

s/ Judge Raymond J. Dearie
_____
RAYMOND J. DEARIE
United States District Judge